UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| SCEPTER, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 3:18-cv-00990 |
| | ) | Chief Judge Crenshaw |
| NOLAN TRANSPORTATION GROUP, LLC, | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

After removing this case from the Davidson County Chancery Court, Nolan Transportation Group, LLC ("NTG") filed a Motion to Dismiss Under F. R. Civ. P. 12(b)(6) or Alternatively to Transfer Venue Under 28 U.S.C. § 1404(a). (Doc. No. 7). Scepter, Inc. ("Scepter") filed a response in opposition to the Motion (Doc. No. 11), and NTG has filed a reply (Doc. No. 12). For the following reasons, NTG's Motion will be denied.

### I. Factual Background

According to the Complaint and its attachments[1] filed in the Chancery Court, these are the facts:

After repeated solicitations from NTG, Scepter completed a "Customer Profile Form." A

---

[1] "When a court is presented with a Rule 12(b)(6) motion, it may consider the Complaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the Complaint and are central to the claims contained therein." Bassett v. Nat'l Collegiate Athletic Ass'n, 528 F.3d 426, 430 (6th Cir. 2008). Similarly, when ruling on a motion to transfer, "[t]he Court may . . . consider exhibits attached to the complaint and documents that are necessarily embraced by the pleadings." P.L. Banks, Inc. v. Organized Fishing, Inc., No. 14-CV-3013 SRN, 2015 WL 420288, at *5 (D. Minn. Feb. 2, 2015); Price v. PBG Hourly Pension Plan, 921 F. Supp. 2d 764, 772 (E.D. Mich. 2013) (collecting cases and stating that in ruling on "a motion to transfer pursuant to § 1404(a) a court is not limited to the pleadings. Rather, "a court may consider undisputed facts outside the pleadings.").

cover sheet titled "Contract Provisions" was attached to the form, and immediately below the signature line on the form was the notation that "[t]he contract provisions on page one (1) are incorporated by reference and constitute a part of the agreement. Reference should be made to the terms of this agreement as stated on page one (1) and NTG's extended terms and conditions located at www.ntglfreight.com/services." (Doc. No. 1-2 at 7). Among other things, the attached Contract Provisions stated:

> Nolan Transportation Group, LLC ("NTG") is a non-asset based Broker and will be referenced as a Broker when any determination of relationship is needed between NTG and Customer. I hereby apply to Nolan Transportation Group, LLC ("NTG") for credit and this form is my authorization to contact our credit references and banking institutions now, and at any future date, for full disclosure of current credit status and release of credit history. This form is not an agreement to extend credit, and that NTG, at its discretion, may extend or withdraw credit at any time. I will promptly notify NTG of any subsequent changes which would affect the accuracy of any information provided. I agree to pay all invoices within 30 days of the invoice date. Further, I agree to pay a service charge of 1½% per month on any and all past due balances. I shall be responsible for 15% attorney fees on the principal and accrued interest combined in the collection of the undersigned's account. **By signing this form, I hereby submit to the jurisdiction and venue of the state courts located in Fulton County, Georgia, or a venue to be decided at the sole discretion of Nolan Transportation Group, with respect to any and all matters arising from this agreement. I do hereby waive all objections to venue and jurisdiction, including forum non conveniens.** By doing business with NTG you are subject to NTG's continued terms and conditions located at www.ntgfreight.com/services.

(Id. at 6) (emphasis added). Nathan Tooley, the Chief Financial Officer of Specter, signed the Customer Profile Form and it was submitted to NTG on June 7, 2018.

The next day, Scepter asked NTG to pick up 44,487 pounds of aluminum ingot from its facility in Waverly, Tennessee, and deliver it to Scepter's customer in Shelbyville, Indiana. The customer agreed to pay $40,532.55 for the ingot.

NTG informed Scepter that a driver would pick-up the ingot on June 14, 2018 at 1:30 p.m.

When the driver did not show as scheduled, both Scepter and NTG called his cell-phone number. The driver stated that he was nearing Scepter's facility.

A tractor, with the words "18 Wheeler" emblazoned on the sleeper, finally arrived at 4:30 p.m. The driver provided Scepter with the appropriate passcode, and then left with the ingot. The driver, tractor trailer, and ingot then vanished, never to be seen by the parties again.

On June 18, 2018, NTG informed Scepter that it had lost the tracking signal from the tractor trailer and that the cargo was presumed stolen. NTG also told Scepter that it did not believe the driver was actually employed by 18 Wheeler Transport. Specter then filed a police report. It also contacted 18 Wheeler Transport in Tucson, Arizona, but was informed that 18 Wheeler Transport did not transport goods that far east.

As a result of these events, Scepter filed suit in the Chancery Court alleging breach of contract, negligence, and violation of the Tennessee Consumer Protections Act. It seeks to recover damages (including the $40,532.55 that the Shelbyville customer promised Specter), plus prejudgment interest, attorney's fees, and costs.

## II. Application of Law

Where a case is improperly filed in contravention of a forum selection clause, the Court has the discretion to either dismiss the action pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, or to transfer the case in accordance with Rule 1404(a). Smith v. Aegon Cos. Pension Plan, 769 F.3d 922, 934 (6th Cir. 2014) ; see Kelly v. Liberty Life Assurance Co. of Boston, No. CV 17-139-DLB, 2018 WL 558643, at *4 (E.D. Ky. Jan. 25, 2018) (stating that, pursuant to Smith, "this Court is permitted to dismiss the matter under Rule 12(b)(6), but not required to do so. Pursuant to 28 U.S.C. § 1404(a), it may also transfer the matter to the appropriate federal forum"); Kresser v.

3

Advanced Tactical Armament Concepts, LLC, No. 3:16-CV-255, 2016 WL 4991596, at *3 (E.D. Tenn. Sept. 16, 2016) (noting discretion to dismiss or transfer based upon Smith). It matters not which avenue the Court takes in this case because the end result is the same: the case will remain here instead of being transferred to the United States District Court for the Northern District of Georgia as requested by NTG.

NTG quotes May v. Ticketmaster Entm't, LLC, No. 3:10-cv-00760, 2010 WL 4024257, at *4 (M.D. Tenn. Oct. 13, 2010) for the proposition "[i]n addressing a Rule 12(b)(6) motion to enforce a forum-selection clause, 'the court only needs to determine whether the forum selection clause is enforceable and applicable; if it is, then the suit should be dismissed.'" (Doc. No. 8 at 4). NTG then notes that Specter "does not challenge the validity of the Contract Provisions" and that "[t]he Forum-Selection Clause broadly covers not only claims for breach of contract" but also tort claims to the extent that they arise out of the agreement between the parties. (Id. at 5). All of this may be true, but the argument hinges on there being a forum selection clause that required Specter to file suit in Fulton County, Georgia. The Contract Provisions contain no such requirement.

A forum selection clause (sometimes abbreviated as an FSC) can be either mandatory or permissive. As the Fifth Circuit has explained:

> A mandatory FSC affirmatively requires that litigation arising from the contract be carried out in a given forum. By contrast, a permissive FSC is only a contractual waiver of personal-jurisdiction and venue objections if litigation is commenced in the specified forum. Only mandatory clauses justify transfer or dismissal. An FSC is mandatory only if it contains clear language specifying that litigation must occur in the specified forum-and language merely indicating that the courts of a particular place "shall have jurisdiction" (or similar) is insufficient to make an FSC mandatory.

Weber v. PACT XPP Techs., AG, 811 F.3d 758, 768 (5th Cir. 2016). In short, "[a] mandatory forum selection clause grants exclusive jurisdiction to a selected forum, while a permissive forum selection

4

clause only reflects the contracting parties' consent to resolve disputes in a certain forum, but does not require that disputes be resolved in that forum." Macsteel Intl USA Corp. v. M/V Larch Arrow, 354 F. App'x 537, 539 (2d Cir. 2009); see also, Am. Soda, LLP v. U.S. Filter Wastewater Grp., Inc., 428 F.3d 921, 926–27 (10th Cir. 2005) (citation omitted) ("The difference between a mandatory and permissive forum selection clause is that '[m]andatory forum selection clauses contain clear language showing that jurisdiction is appropriate only in the designated forum, [while] permissive forum selection clauses authorize jurisdiction in a designated forum, but do not prohibit litigation elsewhere."); N. California Dist. Council of Laborers v. Pittsburgh-Des Moines Steel Co., 69 F.3d 1034, 1037 (9th Cir. 1995) ("To be mandatory, a clause must contain language that clearly designates a forum as the exclusive one.").

Assuming that the Contract Provisions contain what can be properly characterized as a forum selection clause, the clause is permissive, not mandatory. It states that (1) the parties submit to the jurisdiction and venue of the Fulton County, Georgia courts, and (2) Specter waives all objections to that jurisdiction and that venue. This is far different than stating that Specter *must* file suit in Georgia. See, 3rd Rock Logistics, LLC v. Occidental Petroleum Corp., 303 F. Supp. 3d 1166, 1168 (D.N.M. 2018) (finding forum selection clause that stated in relevant part that the parties "voluntarily submit to the jurisdiction and venue of the federal or state courts of the state of Texas for the adjudication of their liabilities and responsibilities" is permissive because the "clause contains no mandatory or obligatory language indicating that the parties shall or must submit to the jurisdiction of Texas courts"); FDIC v. Paragon Mortg. Servs., Inc., No. 1:15 CV 2485, 2016 WL 2646740, at *1 (N.D. Ohio May 10, 2016) (holding that forum selection clause which provided the "parties hereby consent and submit themselves to the jurisdiction and venue in any State or Federal

5

court located in the City of Cleveland, Ohio" and that "[t]his Agreement shall be construed and enforced in accordance with the laws of the State of Ohio" was permissive); Kendle v. Whig Enter., LLC, No. 2:15-CV-1295, 2016 WL 354876, at *1 (S.D. Ohio Jan. 29, 2016) (finding that forum selection clause that stated "[t]his Agreement and the employment relationship created by it shall be governed by Florida law" and that "the parties hereby consent to jurisdiction in Florida for the purposes of any litigation relating to this Agreement" was permissive). A permissive forum selection clause does not deprive the Court of jurisdiction and therefore dismissal under Rule 12(b)(6) is unwarranted. See Weber, 811 F.3d at 768 ("Only mandatory clauses justify transfer or dismissal"); Proffe Publ'g, Inc. v. Lindner, No. 16-CV-93-JL, 2016 WL 6892466, at *4 (D.N.H. Nov. 22, 2016) (holding dismissal under Rule 12(b)(6) is inappropriate when "forum clause appears to be permissive rather than mandatory, and thus does not deprive this court of jurisdiction"); Dorel Steel Erection Corp. v. Capco Steel Corp., 392 F. Supp. 2d 110, 115 (D. Mass. 2005) (denying Rule 12(b)(6) motion that argued complaint failed to state a claim because it was filed in wrong court where forum selection clause was merely permissive).

Nor is transfer appropriate where the forum selection clause is only permissive. "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." 28 U.S.C. § 1404(a). Generally speaking, "in ruling on a motion to transfer under § 1404(a), a district court should consider the private interests of the parties, including their convenience and the convenience of potential witnesses, as well as other public-interest concerns, such as systemic integrity and fairness, which come under the rubric of 'interests of justice.'" Moore v. Rohm & Haas Co., 446 F.3d 643, 647 (6th Cir. 2006) (quoting

Moses v. Bus. Card Exp., Inc., 929 F.2d 1131, 1137 (6th Cir.1991)).

In three ways, however, "[t]he calculus changes . . . when the parties' contract contains a valid forum-selection clause[.]" Atl. Marine Const. Co. v. U.S. Dist. Court for W. Dist. of Texas, 571 U.S. 49, 63 (2013) (quoting Stewart Org., Inc. v. Ricoh Corp., 487 U.S. 22, 31 (1988)). "First, the plaintiff's choice of forum merits no weight. Rather, as the party defying the forum-selection clause, the plaintiff bears the burden of establishing that transfer to the forum for which the parties bargained is unwarranted." Id. "Second, a court evaluating a defendant's § 1404(a) motion to transfer based on a forum-selection clause should not consider arguments about the parties' private interests because "[w]hen parties agree to a forum-selection clause, they waive the right to challenge the preselected forum as inconvenient or less convenient for themselves or their witnesses, or for their pursuit of the litigation." Id. at 64. "Third, when a party bound by a forum-selection clause flouts its contractual obligation and files suit in a different forum, a § 1404(a) transfer of venue will not carry with it the original venue's choice-of-law rules—a factor that in some circumstances may affect public-interest considerations." Id. citing (Piper Aircraft Co. v. Reyno, 454 U.S. 235, 241, n. 6 (1981)). In other words, the framework is modified and "reverses the presumption that would otherwise apply: instead of heavily favoring the plaintiff's chosen forum and placing the burden on the defendant, the forum selection clause is 'given controlling weight in all but the most exceptional cases,' and the plaintiff bears the burden of proving why it should not be enforced." BAE Sys. Tech. Sol. & Servs., Inc. v. Republic of Korea's Def. Acquisition Program Admin., 884 F.3d 463, 471 (4th Cir. 2018) (quoting Atl. Marine, 134 S. Ct. at 581).

NTG argues that the changed calculus set forth in Atlantic Marine applies regardless of whether the clause is mandatory or permissive. It relies on Magistrate Judge Knowles' decision in

7

Enkema v. FTI Consulting, Inc., No. 3:15-1167, 2016 WL 951012, at *3 (M.D. Tenn. Mar. 14, 2016), report and recommendation adopted, No. 3-15-01167, 2016 WL 9711919 (M.D. Tenn. Apr. 6, 2016) in which he stated that "the broad language of the Atlantic Marine Court does not indicate that there is any distinction in analysis between a mandatory clause and a permissive clause." This is undoubtedly the minority view, however, and one that this Court declines to follow.

"Although Atlantic Marine never addressed the 'permissive' versus 'mandatory' distinction, district courts across the country have generally limited the Atlantic Marine framework to situations where the forum selection clause is mandatory." Waste Mgmt. of Louisiana, L.L.C. v. Jefferson Par., 48 F. Supp. 3d 894, 909 (E.D. La. 2014). So have the appellate courts. The Fourth Circuit has observed:

> Although the Atlantic Marine Court did not expressly hold that only a mandatory forum selection clause modifies the forum non conveniens framework, the Court's rationale makes clear that this is so. [Atl. Marine,] 134 S. Ct. at 581–82 (suggesting the modified framework applies "when a plaintiff agrees by contract to bring suit only in a specified forum" (emphasis added)); id. at 583 n.8 (modified framework applies "when the plaintiff has violated a contractual obligation by filing suit in" another forum). . . .
>
> Accordingly, determination of whether the forum selection clause here is permissive or mandatory is critical. If it is mandatory, then Atlantic Marine controls and [plaintiff] bears the burden of proving why it should not be enforced. If it is permissive, then the traditional forum non conveniens analysis applies and [defendant] bears a "heavy burden" in opposing [plaintiff's] alternative forum.

BAE Sys. Tech. Sol. & Servs., 884 F.3d at 471–72 (collecting cases); see also, Weber v. PACT XPP Techs., AG, 811 F.3d 758, 766 (5th Cir. 2016) (stating that the Supreme Court in Atlantic Marine "announced the effect that a mandatory and enforceable FSC should have on the § 1404(a) and [*forum non conveniens*] analyses"); Waste Mgmt. of Louisiana, L.L.C. v. Jefferson Par., 594 F. App'x 820, 821 (5th Cir. 2014) (internal citation omitted) ("Atlantic Marine involved a mandatory

8

clause and its analysis seems premised on the existence of that type of clause. . . . It certainly said nothing disagreeing with the mandatory/permissive distinction. The vast majority of district courts deciding this issue have rejected Atlantic Marine's application to permissive forum selection clauses. . . . So has the only court of appeals that has considered the issue.").

In its reply brief, NTG argues that "Scepter has ignored the agreement that it would waive all objections to venue and jurisdiction, including *forum non conveniens*." (Doc. No. 12 at 2). This is an exceedingly short argument (consisting of less than a paragraph) perhaps because Specter brought suit in this Court and is waiving nothing. As for *forum non conveniens*, there is nothing before the Court to indicate that this is an inconvenient forum. Indeed, NTG does not make the argument even though "the defendant carries the burden of establishing an adequate alternative forum and showing that the plaintiff's chosen forum is unnecessarily burdensome based on public and private interests." Hefferan v. Ethicon Endo-Surgery Inc., 828 F.3d 488, 492 (6th Cir. 2016); accord Associacao Brasileira de Medicina de Grupo v. Stryker Corp., 891 F.3d 615, 618 (6th Cir. 2018). The only thing before the Court are allegations that (1) Specter, a Tennessee corporation, has a principal place of business in Humphreys County, Tennessee; (2) NTG has a place of business in Davidson County, Tennessee; (3) Specter contacted NTG to have aluminum ingot picked up in Waverly, Tennessee; and (4) the ingot disappeared after being picked up in Waverly. There is nothing before the Court to suggest that Fulton County, Georgia would be a more convenient forum to litigate this dispute, and the Court in its discretion will not dismiss or transfer the case based on *forum non conveniens*. See, Associacao Brasileira de Medicina de Grupo, 891 F.3d at 618 (stating that decisions relating to *forum non conveniens* are in the discretion of the district court).

Also in its reply brief, NTG points to additional terms that are allegedly on its website and

9

that were incorporated into the contract between the parties. The website identifies Customer Terms and Conditions which, among other things, contains a "Governing Law and Forum" provision that reads:

> These Terms will be deemed to have been drawn in accordance with the statutes and laws of the state of Georgia and in the event of any disagreement or dispute, the laws of Georgia will apply, without regard to its choice or conflict of law rules, and suit must be brought exclusively in Georgia as each Party specifically submits to the exclusive personal jurisdiction of such courts for disputes involving these Terms or the Services. By doing business with NTG, Customer hereby submits to the jurisdiction and venue of the state courts located in Fulton County, Georgia, or a venue to be decided at the sole discretion of Nolan Transportation Group, with respect to any and all matters arising from this agreement. Customer herby [sic] waives all objections to venue and jurisdiction, including forum non conveniens. By doing business with NTG you are subject to NTG's continued terms and conditions contained herein.

Doc. No. 12-1 at 6). However, in its Complaint, Scepter alleges that there were no such terms and conditions on the website when Tooley signed the Customer Profile Form, and that Scepter first saw the Customer Terms and Conditions two weeks after the apparent theft when those provisions were sent to Specter by NTG. These allegations must be accepted as true for purposes of a motion to dismiss under Rule 12(b)(6), Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009), and when considering a motion to transfer under 1404(a) facts outside the pleadings are considered only when they are undisputed, Price v. PBG Hourly Pension Plan, 921 F. Supp. 2d at 772 (collecting cases). The Court cannot, therefore, accept NTG's assertions regarding the additional terms.

### III. Conclusion

For the foregoing reasons, NTG's Motion to Dismiss Under F.R. Civ. P. 12(b)(6) or Alternatively to Transfer Venue Under 28 U.S.C. § 1404(a) (Doc. No. 7) will be denied.

An appropriate Order will enter.

_____
WAVERLY D. CRENSHAW, JR.
CHIEF UNITED STATES DISTRICT JUDGE